1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED & ENTERED

JUL 13 2017

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>YOUNGCHUL PARK and JEONG HWAN KIM,<br><br>         Debtors. | Case No. 2:14-bk-28415-RK<br><br>Chapter 7<br><br>Adv. No. 2:14-ap-01835-RK |
| INTERNATIONAL BUSINESS INVESTMENT, INC., a California corporation doing business as MANHATTAN.BIZ,<br><br>         Plaintiff,<br><br>      vs.<br><br>YOUNGCHUL PARK and JEONG HWAN KIM<br><br>         Defendants. | **MEMORANDUM DECISION FOLLOWING TRIAL** |

      The above-captioned adversary proceeding came on for trial before the undersigned United States Bankruptcy Judge on December 8, 2016, on the complaint of Plaintiff International Business Investment, Inc., a California corporation doing business as Manhattan.Biz ("International Business" or "Plaintiff") to determine dischargeability of debt pursuant to 11 U.S.C. § 523(a)(6).  Brad C. Barnholtz, of the law firm of Barnholtz & Kugler, appeared for Plaintiff.  Min W. Suh,

1    of the law offices of Min W. Suh, appeared for Debtors Youngchul Park and Jeong

2    Hwan Kim ("Park" or "Kim" or referred jointly as "Defendants").

3            Plaintiff in its complaint alleges that the debt of Defendants from a default

4    judgment from its action in the Superior Court of California for the County of Los

5    Angeles (the "state court") against Defendants as alter egos of a corporate entity, Feb

6    & May, Inc., in the amount of $82,344.00, plus accrued interest at 10% per annum is

7    excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).  *Complaint*, Electronic

8    Case Filing Number ("ECF") 1, at 1-4.  Plaintiff's complaint filed in state court against

9    Defendants as alter egos of Feb & May, Inc., asserted claims of breach of contract,

10    conspiracy to convert commission funds, breach of the covenant of good faith and fair

11    dealing, fraud and intentional interference with prospective economic advantage.

12    *First Amended Complaint*, *International Business Investment, Inc., v. Feb & May,*

13    *Inc., et al.,* Case No. YC 063747, dated February 3, 2012, *Plaintiff's Trial Exhibit 1;*

14    Minute Order, *International Business Investment, Inc., v. Feb & May, Inc., et al.,* Case

15    No. YC 063747, entered on February 24, 2012 (granting Plaintiff's motion for leave to

16    file first amended complaint and first amended complaint deemed filed on date of

17    minute order), *Plaintiff's Trial Exhibit 2.*

18            On February 24, 2012, Plaintiff filed its First Amended Complaint in the state

19    court specifically alleging that "Defendants . . . knowingly and willingly conspired and

20    agreed among themselves (or aided and abetted defendants) to engage in a common

21    scheme or plan to prevent Plaintiff from receiving an accrued and owed commission

22    in connection with the sale of the Peninsula Grill and to convert the commission funds

23    for their own use."  *First Amended Complaint*, *Plaintiff's Trial Exhibit 1,* at 9, ¶ 34.

24    The First Amended Complaint further alleged that the conspiracy involved "secretly

25    agreeing to cancel the escrow opened in connection with the sale of the Peninsula

26    Grill, secretly agreeing to some 'settlement' amongst themselves and payment from

27

28

Buyer to Seller in order for Seller to agree to effectively 'cancel' the entire transaction, and by secret[ly] agreeing to withhold and keep Plaintiff's commission fee." *Id.*

On November 7, 2012, Plaintiff filed the Declaration of Sasa Milosevic in Support of Request for Entry of Default Judgment in the state court action. *Declaration of Sasa Milosevic in Support of Request for Default Judgment by Court, International Business Investment, Inc., v. Feb & May, Inc., et al.,* Case No. YC 063747, *Plaintiff's Trial Exhibit 4.* In this declaration, Mr. Milosevic stated:

> 10. I learned that the Buyer [Feb & May, Inc.] and Seller [Grand Café & Grill, LLC] entered into a 'secret' agreement to cancel escrow and to conspire to prevent broker [Plaintiff] from obtaining the earned commission in connection with this transaction. This understanding is based on a number of facts, including the following:
>
> (a) On or about September 17, 2010, one of buyer's representatives, Jay Yu, informed me that Young Chul Park (another of buyer's representatives) 'wanted out' and that Mr. Park was considering 'going back to Korea' due to potential legal problems with employees working for Peninsula Grill;
>
> (b) On November 23, 2010, Compass Escrow, Inc. escrow officer Carolyn Gould informed me that the buyer and seller submitted a signed request to cancel escrow, without payment of my broker commission, Ms. Carolyn Gould has informed me that buyer's representative, Jay Yu, informed her that buyer wanted to make a 'deal' with seller to cancel escrow and compensate seller in the sum of $100,000.
>
> (c) I spoke with seller's representative, Gor Habeshian, via cellular phone on November 23, 2010. I asked him why he 'made a deal' with buyer without informing me. He stated he was broke, owed lawyer bills, and was going to do what was 'best for [him].' I specifically asked if he was taking $100,000.00 from buyer on the deal and he responded that 'this is my business how much I took.' I received a text message later that day from Gor Habeshian, in which he offered me a plasma television if I would execute a cancellation of the commission agreement with him. I did not agree to such an offer.
>
> (d) On November 23, 2010, I attempted to reach buyer's representative, Jay Yu, I left a message. He later called me back and stated he 'was sorry for [me].' He indicated that he would talk to his partner, Mr. Park, and his lawyer. He stated that 'Mr. Park and the lawyer made deal with seller.' Mr. Yu mentioned to me on a previous

3

1    occasion that he was ready to pay Gor 'on the side' to get out of this
     deal.

2
3            (e)  On November 23, 2010, I contacted seller's lawyer, Kam
     Kooshki, via my cell phone.  He apologized to me and stated that he
4    believed I deserved my commission on the transaction, but that he was
     required to follow his client's instructions.  He informed me that his
5    client owed him legal fees and can not pay those bills.  He inferred that
     any payment to seller by buyer would be useful to pay those bills.

6    *Declaration of Sasa Milosevic in Support of Request for Default Judgment by Court,*

7    *International Business Investment, Inc., v. Feb & May, Inc., et al.,* Case No. YC

8    063747, at 4, *Plaintiff's Trial Exhibit 4.*

9    On March 12, 2013, the state court entered a default judgment against the

10   defendants in the state court action, including Defendants Park and Kim in this

11   adversary proceeding.  *Default Judgment by Court, International Business*

12   *Investment, Inc., v. Feb & May, Inc., et al.,* Case No. YC 063747, filed on March 12,

13   2013, *Plaintiff's Trial Exhibit 3.*  In its judgment, the state court specifically found as

14   follows:

15

16       YOUNG CHUL PARK, an individual, and JEONG HWAN KIM, an
         individual, are the alter egos of Defendant FEB & MAY, INC. and that,
17       in the interest of justice, YOUNG CHUL PARK and JEONG HWAN KIM
         should be held liable for any damages against the corporate entity FEB
18       & MAY, INC.

19       The Court further expressly finds in favor of Plaintiff INTERNATIONAL
20       BUSINESS INVESTMENT, INC. dba MANHATTAN.BIZ, and against
         THE GRAND CAFÉ & GRILL, LLC, FEB & MAY, INC., YOUNG CHUL
21       PARK and JEONG HWAN KIM on the cause of action for conspiracy to
         convert commission funds, deems this conduct to be intentionally done
22       to deprive Plaintiff of monies rightfully owed to it, and makes a finding of
         despicable conduct which was carried on by the defendants with a
23       willful and conscious disregard of the rights of Plaintiff under Code of
24       Civil Procedure § 3294.

25   *Id.; see also,* Uncontested Fact W, *Joint Pretrial Stipulation for Claims for Relief*,

26   ECF 36, filed on July 26, 2016.

27

28

4

On March 22, 2013, Plaintiff filed an ex parte application to dissolve the preliminary injunction issued in the state court case and to obtain the release of funds in the amount of $27,600 in partial satisfaction of the judgment, which was granted. *Ex Parte Application for Orders: (1) Dissolving Preliminary Injunction; (2) Releasing Escrow Funds to Plaintiff, etc., International Business Investment, Inc., v. Feb & May, Inc., et al.,* Case No. YC 063747, entered on March 22, 2013; Stipulated Fact X, Joint Pretrial Stipulation for Claims for Relief, ECF 36, filed on July 26, 2016. Plaintiff collected the released funds of $27,600 and applied them to the award of attorneys' fees under the judgment. Uncontested Fact Y, *Joint Pretrial Stipulation for Claims for Relief,* ECF 36, filed on July 26, 2016 ("The sum of $27,600 was applied toward satisfaction of the award of attorneys' fees under the judgment, but there remains a principal balance of $82,344, which includes at least $27,600 of nondischargeable debt.").

After trial, the parties lodged proposed findings of fact and conclusions of law. *Plaintiff's [Proposed] Findings of Facts and Conclusions of Law*, ECF 52, lodged on April 12, 2017; *Defendants' Alternative Findings of Fact and Conclusions of Law After Trial,* ECF 53, lodged on April 14, 2017. According to Plaintiff, the amount of the judgment debt that is nondischargeable is $41,554.56 (after deducting from the total original judgment of $109,944.56 the prior payment of attorneys' fees in the amount of $27,600 and the remaining balance of the attorneys' fees of $40,790, which is dischargeable). *Plaintiff's [Proposed] Findings of Facts and Conclusions of Law*, ECF 52 at 17 n. 3, lodged on April 12, 2017. The components of the state court judgment included special damages from the earned commissions of $27,600, prejudgment interest, costs of suit and the award of attorneys' fees. *Default Judgment by Court, International Business Investment, Inc., v. Feb & May, Inc., et al.,* Case No. YC 063747, filed on March 12, 2013, *Plaintiff's Trial Exhibit 3.*

1  Having considered the testimony of the witnesses at trial, the documentary

2  evidence received at trial, the parties' oral and written arguments, including their

3  proposed findings of fact and conclusions of law, and the objections interposed

4  thereto, this court hereby makes the following findings of fact and conclusions of

5  law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule

6  52 of the Federal Rules of Civil Procedure.

7  **FINDINGS OF FACT**

8  On September 12, 2014, Defendants, who are husband and wife, filed a joint

9  petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C.  Uncontested

10  Fact A and D, *Joint Pretrial Stipulation for Claims for Relief,* ECF 36, filed on July

11  26, 2016.

12  On December 29, 2014, Plaintiff commenced this adversary proceeding by

13  filing a complaint seeking determination of dischargeability of debt pursuant to 11

14  U.S.C. § 523(a)(6).  Uncontested Fact B, *Joint Pretrial Stipulation for Claims for*

15  *Relief,* ECF 36, filed on July 26, 2016.  Plaintiff is a business real estate broker

16  acting through its president, Sasa Milosevic ("Milosevic"), who is a licensed broker

17  with the California Department of Real Estate, License #01516168.  *Trial*

18  *Declaration of Sasa Milosevic,* filed on November 30, 2016, at 1-2, ¶ 1.  Milosevic

19  was also previously the designated licensed officer of Plaintiff under California

20  Department of Real Estate License #01329766 during the relevant time periods in

21  this case.  *Id*.

22  The state court action against Defendants Park and Kim and other

23  defendants, The Grand Café & Grill LLC and Feb & May, Inc., involved a real estate

24  transaction for which Plaintiff alleged that it did not get paid its commission.  *First*

25  *Amended Complaint, International Business Investment, Inc., v. Feb & May, Inc., et*

26  *al.,* Case No. YC 063747, dated February 3, 2012; Uncontested Facts C-J and L,

27  *Joint Pretrial Stipulation for Claims for Relief,* ECF 36, filed on July 26, 2016.  The

28

6

1  details of this real estate transaction are as follows.  On February 28, 2008, The

2  Grand Café and Grill LLC executed a representation agreement to retain Plaintiff to

3  act as a listing agent and broker to sell its restaurant business called the "Peninsula

4  Grill" located at 550 Deep Valley Drive, #265, Rolling Hills Estates, California 90274

5  to Feb & May, Inc.  Uncontested Fact C, *Joint Pretrial Stipulation for Claims for*

6  *Relief,* ECF 36, filed on July 26, 2016; *Trial Declaration of Sasa Milosevic,* filed on

7  November 30, 2016, at 2, ¶ 3.  On November 25, 2009, Feb & May, Inc., entered

8  into a written agreement where Plaintiff acted as a dual agent and broker for the

9  sale of the Peninsula Grill to Feb & May, Inc.  Uncontested Fact D, *Joint Pretrial*

10  *Stipulation for Claims for Relief,* ECF 36, filed on July 26, 2016; *Trial Declaration of*

11  *Sasa Milosevic,* filed on November 30, 2016, at 2, ¶ 3.

12        Park was an officer of the corporate entity, Feb & May, Inc., and Kim is the

13  wife of Park and was an owner and an officer, the president, of the corporate entity,

14  Feb & May, Inc.  Trial Testimony of Park, *Plaintiff's Notice of Lodging of Transcripts*

15  *of the Audio Recordings of Trial on December 8, 2016,* ECF 47, lodged on February

16  6, 2017, Vol. 1 at 31 and 38.  Park considered himself to be the co-owner and an

17  officer of the company with his wife, Kim.  Trial Testimony of Park, *Plaintiff's Notice*

18  *of Lodging of Transcripts of the Audio Recordings of Trial on December 8, 2016,*

19  ECF 47, lodged on February 6, 2017, Vol. 1 at 31-33; Uncontested Fact D, *Joint*

20  *Pretrial Stipulation for Claims for Relief,* ECF 36, filed on July 26, 2016; *Trial*

21  *Declaration of Sasa Milosevic,* filed on November 30, 2016, at 2, ¶ 3.

22        On December 1, 2009, Park and Kim, acting on behalf of Feb & May, Inc.,

23  and The Grand Café & Grill LLC entered into a business purchase agreement and

24  joint escrow instruction for the sale of the Peninsula Grill.  Uncontested Fact E,

25  *Joint Pretrial Stipulation for Claims for Relief,* ECF 36, filed on July 26, 2016; *Trial*

26  *Declaration of Sasa Milosevic,* filed on November 30, 2016, at 2-3, ¶ 5.  Feb & May,

27  Inc., deposited $27,600 in escrow to pay the sales commission owed on the

28

7

transaction to Plaintiff.  Uncontested Fact E, *Joint Pretrial Stipulation for Claims for Relief*, ECF 36, filed on July 26, 2016; *Trial Declaration of Sasa Milosevic,* filed on November 30, 2016, at 2, ¶ 4.  Milosevic was personally involved as the broker for Plaintiff in connection with the sales transaction for the Peninsula Grill restaurant between seller, The Grand Café and Grill LLC, and buyer, Feb & May, Inc. *Trial Declaration of Sasa Milosevic,* filed on November 30, 2016, at 2-3, ¶ 5.

On January 4, 2010, buyer, Feb & May, Inc., executed an early possession agreement so that Feb & May, Inc. could take early possession of the Peninsula Grill.  *Id.* at 3, ¶ 6; Uncontested Fact F, *Joint Pretrial Stipulation for Claims for Relief,* ECF 36, filed on July 26, 2016.  The purchase price for the Peninsula Grill, including the $27,600 commission fee to Plaintiff, was placed in an escrow account with Compass Escrow, Inc. under Escrow Account #14489CG, and the escrow agent was Carolyn Gould.  Uncontested Fact G, Joint Pretrial Stipulation for Claims for Relief, ECF 36, filed on July 26, 2016; *Trial Declaration of Sasa Milosevic,* filed on November 30, 2016, at 2-3, ¶ 6.

On or about November 23, 2010, seller, The Grand Café and Grill LLC, and buyer, Feb & May, Inc., entered into an agreement to settle a dispute between them over the sale of the Peninsula Grill.  Uncontested Fact H, *Joint Pretrial Stipulation for Claims for Relief,* ECF 36, filed on July 26, 2016; *Trial Declaration of Sasa Milosevic,* filed on November 30, 2016, at 2-3, ¶ 7.  The Grand Café and Grill LLC agreed to distribute some portion of the funds in escrow to Feb & May, Inc. and to allow The Grand Café & Grill LLC to rescind the purchase agreement for the Peninsula Grill.  Uncontested Fact I, *Joint Pretrial Stipulation for Claims for Relief,* ECF 36, filed on July 26, 2016; *Trial Declaration of Sasa Milosevic,* filed on November 30, 2016, at 2-3, ¶ 7; *Settlement Agreement and Release, Defendants' Trial Exhibit C.*  The escrow agent, Carolyn Gould, was instructed to prepare cancellation instructions of the sale of the Peninsula Grill.  *Id.*  The Mutual

8

1 Cancellation Instructions provided for disbursement of the escrowed funds without

2 providing for payment of a sales commission to Plaintiff.  *Id.*

3     Kim executed the Mutual Cancellation Instructions for escrow on behalf of

4 Feb & May, Inc.  *Notice of Cancellation of Escrow, Defendants' Trial Exhibit B.*  Kim

5 also executed the Settlement Agreement and Release to settle the dispute between

6 The Grand Café & Grill LLC and Feb & May, Inc.  *Settlement Agreement and*

7 *Release, Defendants' Trial Exhibit C.*  Park testified at trial that he was involved in

8 the purchase of the Peninsula Grill and was responsible for directing Feb & May,

9 Inc. in connection with that purchase.  Trial Testimony of Park, *Plaintiff's Notice of*

10 *Lodging of Transcripts of the Audio Recordings of Trial on December 8, 2016,* ECF

11 47, lodged on February 6, 2017, Vol. 1 at 33-34.  Park also testified that he was

12 responsible for directing the money from buyer, Feb & May, Inc., into the escrow

13 account in connection with the transaction to purchase the Peninsula Grill.  *Id.*  Park

14 testified that after the purchase was cancelled, the funds of the buyer, Feb & May,

15 Inc., went back into its corporate bank account for Feb & May, Inc., and then he had

16 the funds wired out of the country about a week later to repay relatives or for

17 Defendants' living expenses.  *Id.,* Vol. I at 35-37.  Park testified that after most of

18 the escrow funds were returned to Feb & May, Inc., over $400,000 was quickly

19 removed from its bank account, leaving the entity without funds.  *Id.*  Feb & May,

20 Inc. did not otherwise have any assets, leaving Feb & May, Inc. insolvent.  *Id.; Trial*

21 *Declaration of Sasa Milosevic,* filed on November 30, 2016, at 4, ¶ 9.

22     Park testified that he and Kim discussed all the major decisions concerning

23 Feb & May, Inc., and made the decisions for the business jointly.  Trial Testimony of

24 Park, *Plaintiff's Notice of Lodging of Transcripts of the Audio Recordings of Trial on*

25 *December 8, 2016,* ECF 47, lodged on February 6, 2017, Vol. 1 at 38.  After

26 Plaintiff filed its complaint in the state court action naming Feb & May, Inc. as a

27 defendant on December 2, 2010, Defendants jointly decided to hire an attorney to

28

1 represent the entity. *Id.,* Vol. 1 at 39. On the same date that Plaintiff filed its

2 complaint in the state court action, it also filed a motion for preliminary injunction to

3 enjoin defendants in that action, Feb & May, Inc., and The Grand Café & Grill, as

4 well as their respective employees, agents, and persons acting with them or on

5 their behalf, from receipt and use of the commission funds of $27,600 deposited

6 into the escrow, and that motion for preliminary injunction was granted on January

7 4, 2011. Uncontested Facts L and M, *Joint Pretrial Stipulation for Claims for Relief,*

8 ECF 36, filed on July 26, 2016; *Trial Declaration of Sasa Milosevic,* filed on

9 November 30, 2016, at 4, ¶ 10.

10         On January 31, 2011, Feb & May, Inc., through its counsel, filed its answer

11 to Plaintiff's complaint in the state court action. *Los Angeles Superior Court Case*

12 *Summary, International Business Investment, Inc., v. Feb & May, Inc., et al.,* Case

13 No. YC 063747, *Defendants' Trial Exhibit A* at 5. On February 24, 2012, Plaintiff

14 filed its first amended complaint in the state court action against the defendants Feb

15 & May, Inc., The Grand Café & Grill LLC, Youngchul Park, and Jeong Hwan Kim,

16 and the first amended complaint added Park and Kim as individual defendants and

17 added allegations that they were alter egos of Feb & May, Inc., and by order of the

18 state court, Plaintiff's first amended complaint was deemed immediately filed and

19 served as to defendant Feb & May, Inc. Uncontested Facts N and O, *Joint Pretrial*

20 *Stipulation for Claims for Relief*, ECF 36, filed on July 26, 2016; *First Amended*

21 *Complaint*, *International Business Investment, Inc., v. Feb & May, Inc., et al.,* Case

22 No. YC 063747, dated February 3, 2012, *Plaintiff's Trial Exhibit 1; Minute Order*,

23 *International Business Investment, Inc., v. Feb & May, Inc., et al.,* Case No. YC

24 063747, entered on February 24, 2012 (granting Plaintiff's motion for leave to file

25 first amended complaint and first amended complaint deemed filed on date of

26 minute order), *Plaintiff's Trial Exhibit 2* (evidencing that the First Amended

27 Complaint was deemed filed and served as of February 24, 2012 on existing

28

1  parties, including Feb & May, Inc.); *Trial Declaration of Sasa Milosevic,* filed on

2  November 30, 2016, at 4-5, ¶ 11.

3            Park communicated with Feb & May, Inc.'s lawyer about what was going on

4  with the state court action during the pendency of the lawsuit.  Trial Testimony of

5  Park, *Plaintiff's Notice of Lodging of Transcripts of the Audio Recordings of Trial on*

6  *December 8, 2016,* ECF 47, lodged on February 6, 2017, Vol. 1 at 39.  When Park

7  and the company's attorney would talk about relevant or important things regarding

8  the lawsuit, Park would relay that information to his wife, Kim, to keep her apprised

9  of the pending litigation.  *Id.*  If the attorney gave information to Park, he would

10  discuss it with his wife.  *Id.,* Vol. I at 39-40.  Feb & May, Inc., was represented by

11  counsel in the state court action until August 15, 2012 when counsel was granted a

12  motion to be relieved of representing it.  Uncontested Fact P, *Joint Pretrial*

13  *Stipulation for Claims for Relief*, ECF 36, filed on July 26, 2016; *Trial Declaration of*

14  *Sasa Milosevic,* filed on November 30, 2016, at 5, ¶ 12; *Los Angeles Superior Court*

15  *Case Summary, International Business Investment, Inc., v. Feb & May, Inc., et al.,*

16  Case No. YC 063747, *Defendants' Trial Exhibit A* at 2 (evidencing the Order

17  relieving counsel on August 15, 2012).  This shows that Feb & May, Inc. was

18  represented by counsel for nearly six months after Plaintiff's first amended

19  complaint in the state court action containing the alter ego allegations was filed and

20  served.  In the state court action, Plaintiff proceeded against Park and Kim as "alter

21  egos" of the corporate defendant, Feb & May, Inc., as opposed to Defendants in

22  their "individual" capacities based on a number of considerations, including his

23  belief that Park and Kim were evading service of process, and Plaintiff sought to

24  avoid the cost of service by publication.  *Trial Declaration of Sasa Milosevic,* filed on

25  November 30, 2016, at 5, ¶ 13.

26            On March 12, 2013, the state court entered a default judgment against the

27  defendants Feb & May, Inc., The Grand Café & Grill LLC and Youngchul Park and

28

1   Jeong Hwan Kim in their capacities as alter egos of Feb & May, Inc.  Uncontested

2   Fact R, *Joint Pretrial Stipulation for Claims for Relief,* ECF 36, filed on July 26,

3   2016; *Trial Declaration of Sasa Milosevic,* filed on November 30, 2016, at 5, ¶ 12;

4   Los Angeles Superior Court Case Summary, *International Business Investment,*

5   *Inc., v. Feb & May, Inc., et al.,* Case No. YC 063747, at 2 (evidencing the filing of a

6   default judgment on March 12, 2013).  The state court's default judgment provided

7   for joint and several liability against Park and Kim, as alter egos of the corporation,

8   Feb & May, Inc., in the total sum of $109,948.56.  Uncontested Fact T, *Joint Pretrial*

9   *Stipulation for Claims for Relief,* ECF 36, filed on July 26, 2016; Default Judgment

10  by Court, *International Business Investment, Inc., v. Feb & May, Inc., et al.,* Case

11  No. YC 063747*, Plaintiff's Trial Exhibit 3.*  The state court in the default judgment

12  made an express finding of fact that "YOUNG CHUL PARK, an individual, and

13  JEONG HWAN KIM, an individual, are alter egos of Defendant FEB & MAY, INC.,

14  and that, in the interest of justice, YOUNG CHUL PARK and JEONG HWAN KIM

15  should be held liable for any damages against the corporate entity FEB & MAY,

16  INC."  *Default Judgment by Court, International Business Investment, Inc., v. Feb &*

17  *May, Inc., et al.,* Case No. YC 063747, *Plaintiff's Trial Exhibit 3.*  The state court

18  made a further express finding against Park and Kim and the other defendants on

19  the cause of action for conspiracy to convert commission funds: "The Court further

20  expressly finds in favor of Plaintiff INTERNATIONAL BUSINESS INVESTMENT,

21  INC., dba MANHATTAN.BIZ, and against THE GRAND CAFÉ & GRILL, LLC, FEB

22  & MAY, INC., YOUNG CHUL PARK and JEONG HWAN KIM on the cause of action

23  for conspiracy to convert commission funds, deems this conduct to be intentionally

24  done to deprive Plaintiff of monies rightfully owed to it, and makes a finding of

25  despicable conduct which was carried on by the defendants with a willful and

26  conscious disregard of the rights of Plaintiff under [California] Code of Civil

27  Procedure § 3294."  Uncontested Facts U, V and W, *Joint Pretrial Stipulation for*

28

1  *Claims for Relief*, ECF 36, filed on July 26, 2016; *Default Judgment by Court,*

2  *International Business Investment, Inc., v. Feb & May, Inc., et al.,* Case No. YC

3  063747, *Plaintiff's Trial Exhibit 3.* Part of the evidence in the record for Plaintiff's

4  prove-up of the default judgment in the state court action pursuant to California

5  Code of Civil Procedure § 585(a), (b) and (c) included the declaration of Sasa

6  Milosevic describing the "secret agreement" between the buyer, Feb & May, Inc.,

7  and its principals, Defendants Park and Kim, and the Seller, Grand Café & Grill,

8  LLC, and its principal, Gor Habeshian, to cancel escrow and to conspire to prevent

9  the broker, Plaintiff, from obtaining its earned commission in connection with the

10  Peninsula Grill purchase and sale transaction. *Declaration of Sasa Milosevic in*

11  *Support of Request for Default Judgment by Court, International Business*

12  *Investment, Inc., v. Feb & May, Inc., et al.,* Case No. YC 063747, at 4, *Plaintiff's*

13  *Trial Exhibit 4.*[1]

14      On March 22, 2013, Plaintiff filed an ex parte application in the state court

15  action to dissolve the injunction and permit release of the $27,600 in partial

16  satisfaction of the default judgment. This ex parte application was granted. The

17  sum of $27,600 that was released was applied toward satisfaction of attorneys' fees

18  under the judgment, leaving a principal balance of $82,344 on the judgment.

19  Uncontested Facts X and Y, *Joint Pretrial Stipulation for Claims for Relief*, ECF 36,

20  filed on July 26, 2016; *Trial Declaration of Sasa Milosevic,* filed on November 30,

21  2016, at 5, ¶ 16.

22      Because Plaintiff applied the funds of $27,600 released upon its ex parte

23  application after judgment to the portion of the judgment for attorneys' fees, these

---

[1]  Mr. Milosevic's testimony on a secret agreement between the buyer's representatives, Defendants Park and Kim, and the seller's representative, Gor Habeshian, to conspire to deprive Plaintiff of its earned sales commission on the Peninsula Grill deal is in evidence through Mr. Milosevic's declaration in support of Plaintiff's motion for default judgment in the state court action, which was received as Plaintiff's Trial Exhibit 4 without objection, though the court had sustained Defendants' objection to similar statements made by Mr. Milosevic in his trial declaration filed in this adversary proceeding. Argument on Evidentiary Objections, *Plaintiff's Notice of Lodging of Transcripts of the Audio Recordings of Trial on December 8, 2016,* ECF 47, lodged on February 6, 2017, Vol. 1 at 1-2, 5-6.

funds did not constitute payment of the actual commission funds owed to Plaintiff. The default judgment in the amount of $109,444.56 awarded by the state court against Park and Kim, jointly and severally, as alter egos of Feb & May, Inc., provided for an award of attorneys' fees in the sum of $68,390, which Plaintiff admits was based on a contract claim and not based on any intentional tort cause of action in the First Amended Complaint. *First Amended Complaint*, *International Business Investment, Inc., v. Feb & May, Inc., et al.,* Case No. YC 063747, dated February 3, 2012, at 9, ¶ 32 (prayer in Plaintiff's contract claim for award of attorneys' fees), Plaintiff's Trial Exhibit 1; Uncontested Facts X and Y, *Joint Pretrial Stipulation for Claims for Relief,* ECF 36, filed on July 26, 2016; *Default Judgment by Court, International Business Investment, Inc., v. Feb & May, Inc., et al.,* Case No. YC 063747, *Plaintiff's Trial Exhibit 3.* The amount of the debt from the default judgment that would be non-dischargeable would be $41,554.56. *Id.*

## CONCLUSIONS OF LAW

### A. Plaintiff's 11 U.S.C. § 523(a)(6) Claim

Under 11 U.S.C. § 523(a)(6), an individual debtor may not discharge a debt to the extent that such debt was obtained "for willful or malicious injury by the debtor to another" or "to the property of another." *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2001). "The Supreme Court in *Kawaauhau v. Geiger (In re Geiger)*, 523 U.S. 57, 118 S. Ct. 974, 140 L.Ed.2d 90 (1998), made it clear that for section 523(a)(6) to apply, the actor must intend the consequences of the act, not simply the act itself." *Ormsby v. First American Title Co. of Nevada (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010). "The injury must be deliberate or intentional, 'not merely a deliberate or intentional **act** that leads to injury.'" *In re Plyam*, 530 B.R. 456, 463 (9th Cir. BAP 2015) *quoting*, *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original).

1  Plaintiff bears the burden of proof in its claims to prove by a

2  preponderance of the evidence that collateral estoppel applies to bar relitigation

3  of the judgment that it obtained in the state court action.  *Grogan v. Garner*, 498

4  U.S. 279, 289 (1991).  An injury is "willful" "when it is shown either that the

5  debtor had a subjective motive to inflict the injury *or* that the debtor believed that

6  injury was substantially certain to occur as a result of his conduct."  *Petralia v.*

7  *Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2001) (emphasis in

8  original).  "Willful" intent does not require that the debtor had the specific intent

9  to injure the creditor, if the act was intentional and the debtor knew that it would

10  necessarily cause injury.  *Id.* at 1207.  "Willful" means "voluntary" or

11  "intentional," *Kawaauhau v. Geiger*, 523 U.S. at 61-62, *citing,* Restatement

12  (Second) of Torts, §8A, comment A (1964).  This standard focuses on the

13  debtor's subjective intent, and not "whether an objective, reasonable person

14  would have known that the actions in question were substantially certain to

15  injure the creditor."  *Carillo v. Su (In re Su)*, 290 F.3d 1140, 1145-1146 (9th Cir.

16  2002).

17  The "malicious" injury requirement is separate from the "willful"

18  requirement.  *In re Su*, 290 F.3d at 1146.  An injury is "malicious" if it involves

19  "(1) a wrongful act, (2) done intentionally, (3) which necessarily caused injury,

20  and (4) is done without just cause or excuse."  *In re Jercich*, 238 F.3d at 1209,

21  *citing*, *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791 (9th Cir. 1997).

22  This definition "does not require a showing of biblical malice, i.e. personal

23  hatred, spite, or ill-will."  *In re Bammer*, 131 F.3d at 791.

24  **B. Res Judicata**

25  "Bankruptcy courts recognize and apply the basic principles of *res*

26  *judicata* in determining the effect to be given in bankruptcy proceedings to

27  judgments rendered in other forums."  *Comer v. Comer (In re Comer)*, 723 F.2d

28

1   737, 739 (9th Cir. 1984) (citation omitted).  In determining the res judicata effect

2   of a state court judgment, federal courts must, as a matter of full faith and

3   credit, apply that state's law of res judicata."  28 U.S.C. § 1738; *see also*, *In re*

4   *Comer*, 723 F.2d at 739-741; *Bugna v. McArthur (In re Bugna)*, 33 F.3d 1054,

5   1057 (9th Cir. 1994) (full faith and credit applied to state court judgments for

6   collateral estoppel purposes), *citing* 28 U.S.C. § 1738.  Bankruptcy courts must

7   therefore give the preclusive effect to a state court judgment that it would

8   receive in the courts of that state.  *Id.*  If a state court judgment is entitled to res

9   judicata effect, the bankruptcy court may not look behind that judgment to

10  determine the actual amount of the judgment debt obligation.  *Id.*  However, res

11  judicata does not apply to the determination of whether a debt is excepted from

12  discharge under the Bankruptcy Code since that matter is litigated for the first

13  time in a debt dischargeability proceeding, and not in a prebankruptcy collection

14  proceeding.  *In re Comer,* 723 F.2d at 739-741, *citing inter alia, Brown v.*

15  *Felsen*, 442 U.S. 127 (1979).

16       In California, "[r]es judicata, or claim preclusion, prevents relitigation of

17  the same cause of action in a second suit between the same parties or parties

18  in privity with them."  *Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888, 896

19  (2002) (citation omitted).  Res judicata precludes the relitigation of a cause of

20  action only if (1) the decision in the prior proceeding is final and on the merits;

21  (2) the present action is on the same cause of action as the prior proceeding;

22  and (3) the parties in the present action or parties in privity with them were

23  parties to the prior proceeding.  *Busick v. Workmen's Compensation Appeals*

24  *Board*, 7 Cal.3d 967, 974 (1972).

25       This court finds that Plaintiff has shown by a preponderance of the

26  evidence that the default judgment in the state court action is final and on the

27  merits, that the present action as to the amount of the liability is the same as the

28

1  prior proceeding and that the parties in the present action or parties in privity with

2  them were parties to the prior proceeding.

3       The state court judgment was entered on March 12, 2013 and Notice of

4  Entry of Default Judgment was filed March 22, 2013. *Los Angeles Superior Court*

5  *Case Summary, International Business Investment, Inc., v. Feb & May Inc., et al.,*

6  *Case No. YC 093747, Defendants' Trial Exhibit A* at 1-2 (evidencing the entry of

7  judgment on March 12, 2013 and no appeal docketed). There was no evidence

8  presented of a timely appeal as shown on the state court's case summary. Id.

9  Thus, the state court judgment as to the amount of the liability was final for res

10  judicata purposes.

11       A judgment by default is generally entitled to res judicata effect as a

12  judgment on the merits under California law. *Brown v. Brown*, 170 Cal. 1,

13  5 (1915); *Fitzgerald v. Herzer*, 78 Cal.App.2d 127, 131 (1947). However,

14  a default judgment is only given preclusive effect if the defendant: (1) had

15  actual notice of the litigation and an opportunity to participate; and (2) the

16  issues were actually litigated in the action. *Harmon v. Kobrin (In re*

17  *Harmon)*, 250 F.3d 1240, 1246-1249 (9th Cir. 2001), *cited in,* March, Ahart and

18  Shapiro, *California Practice Guide: Bankruptcy,* ¶ 22:1712 (online ed.

19  December 2016 update). The state court default judgment should be

20  considered as a judgment on the merits as to the amount of the liability since as

21  discussed herein, Defendants had actual notice of the litigation and an

22  opportunity to participate and the amount of the liability was an issue actually

23  litigated in the prior state court action, and is entitled to res judicata effect since

24  the same parties or parties in privity are involved in the prior state court action

25  and this action.

26       The court finds that Plaintiff has shown by a preponderance of the

27  evidence that the issue of liability of Defendants was actually litigated because

28

the state court found in favor of Plaintiff and against Feb & May, Inc. and held

Defendants Park and Kim liable as its alter egos, on the cause of action for

conspiracy to convert commission funds in the state court action.  *Default*

*Judgment by Court, International Business Investment, Inc., v. Feb & May, Inc., et*

*al.,* Case No. YC 063747, *Plaintiff's Trial Exhibit 3.*

The court finds that Plaintiff has shown by a preponderance of the evidence

that the parties in this case are the same parties or in privity with the parties in the

former proceeding.  The plaintiff in this case, International Business Investment,

Inc. dba Manhattan.Biz, is the same party as the plaintiff in the state court action.

The defendants in this case, Park and Kim, were alleged alter egos in the state

court action and were in privity with Feb & May, Inc., a party defendant in the

state court action.  The court finds that Plaintiff has met its burden of proof to

establish that Defendants Park and Kim had actual knowledge of the First

Amended Complaint in the underlying state court action, upon which the default

judgment was obtained, and that privity existed between Feb & May, Inc., and

Defendants Park and Kim based on the following evidence.

Defendant Park testified that he was an officer, director and shareholder of

the corporate entity Feb & May, Inc. and that his wife, Kim was the owner and officer

as president of the corporate entity, Feb & May, Inc.  As Park testified at trial,

however, he considered himself a co-owner and an officer of this company with his

wife, Kim.  Park was further involved in the sales and purchase transaction of the

Peninsula Grill and was responsible for directing Feb & May, Inc.'s funds, in

connection with that purchase transaction, into the escrow account and also directed

the funds out of Feb & May, Inc.  Because Defendants Park and Kim discussed

and made all the major decisions concerning Feb & May, Inc. and Defendants

Park and Kim made these decisions jointly, the court determines that the privity

requirement is met for res judicata purposes.

1    Furthermore, the court finds that Defendant Park and Kim controlled the

2   state court litigation as they hired the attorney to represent Feb & May, Inc. as a

3   defendant in the state court lawsuit filed against Feb & May, Inc.  As previously

4   mentioned, Defendant Park was involved in communicating with the lawyer for

5   Feb & May, Inc. about what was going on with the state court action during

6   the pendency of the lawsuit.  When Defendant Park and the attorney for Feb &

7   May, Inc. would talk about relevant or important things regarding the lawsuit, Park

8   would relay that information to his wife, Defendant Kim, to keep her in the loop of

9   what was going on.  Thus, this court finds that the evidence presented, and the

10  reasonable inferences drawn therefrom, is sufficient to meet Plaintiff's burden of

11  proof on the issue of privity for res judicata purposes.

12    Defendants argue that the state court default judgment does not have

13  preclusive effect because the judgment was entered without proof of service of

14  the summons and complaint in that action.  *Defendants Youngchul Park and*

15  *Jeong Hwan Kim's Trial Brief, ECF 46,* filed on December 8, 2016*, at 3-4.*  This

16  argument is unavailing.  As stated before, a default judgment may be only given

17  preclusive effect if the defendant:  (1) had actual notice of the litigation and an

18  opportunity to participate; and (2) the issues were actually litigated in the action.

19  *In re Harmon*, 250 F.3d at 1246-1249, *cited in,* March, Ahart and Shapiro,

20  *California Practice Guide: Bankruptcy,* ¶ 22:1712.  As discussed above, they

21  had actual notice and the opportunity to participate in the state court litigation as

22  they controlled the state court litigation for the co-defendant, Feb & May, Inc.,

23  their incorporated business, as they hired the attorney to represent the entity

24  and communicated with the attorney and monitored the litigation including the

25  time period after the complaint was amended to add them as alter ego

26  defendants.  The issues relating to Defendants' culpability as co-conspirators on

27  Plaintiff's second cause of action for conspiracy to convert Plaintiff's sales

28

1  commissions were actually litigated in the state court litigation as discussed

2  herein.  Thus, the application of res judicata here to the state court default

3  judgment is proper.

4      Accordingly, Plaintiff has shown by a preponderance of the evidence that the

5  state court default judgment as to the amount of the liability of Defendants is

6  entitled to res judicata effect because the judgement of liability is now a final

7  judgment  on the merits, the amount of liability was actually litigated and the prior

8  state court action involved the same parties or parties in privity in this action.  The

9  amount of the debt from the state court default judgment is res judicata in this case.

10  *In re Comer, supra.*  However, the state court judgment is not res judicata as to the

11  issue of whether the debt is except from discharge under the Bankruptcy Code.  *Id.*

12  **C. Collateral Estoppel**

13      While a prior state court judgment in a prebankruptcy collection action

14  may not have res judicata effect as to whether a debt is excepted from

15  discharge, the state court judgment may have collateral estoppel effect.  The

16  doctrine of collateral estoppel applies in debt dischargeability proceedings in

17  bankruptcy courts.  *Grogan v. Garner*, 498 U.S. at 284 n.11.  "In determining

18  the collateral estoppel effect of a state court judgment, federal courts must, as a

19  matter of full faith and credit, apply that state's law of collateral estoppel."  *In re*

20  *Bugna*, 33 F.3d at 1057, *citing* 28 U.S.C. § 1738.  Bankruptcy courts must

21  therefore give the preclusive effect to a state court judgment that it would

22  receive in the courts of that state.  *Gayden v. Nourbakhsh (In re Nourbakhsh)*,

23  67 F.3d 798, 800-802 (9th Cir. 1995).

24      Under California law, there are five threshold requirements to apply

25  collateral estoppel: (1) the issue sought to be precluded from relitigation must

26  be identical to that decided in a former proceeding; (2) that issue must have

27  been actually litigated in the former proceeding; (3) it must have been

28

20

1    necessarily decided in the former proceeding; (4) the decision in the former

2    proceeding must be final and on the merits; (5) the party against whom

3    preclusion is sought must be the same as, or in privity with, the party to the

4    former proceeding.  *In re Harmon*, 250 F.3d at 1245, *citing, Lucido v. Superior*

5    *Court*, 51 Cal.3d 335, 341 (1990).  The party asserting collateral estoppel has

6    the burden to establish these requirements.  *Id.*

7            California law imposes a notice requirement in addition to the five

8    threshold requirements described in *Lucido v. Superior Court*, 51 Cal.3d at 340.

9    In *In re Harmon*, Plaintiff sued and alleged, among other things, claims for

10   conversion and contract violations.  *In re Harmon*, 250 F.3d at 1244-1245.  While

11   the defendant was not personally served in the state court action, he had actual

12   knowledge of the litigation, and the trial court found that the defendant participated

13   in the litigation and that his default resulted not from ignorance of the litigation,

14   but from his attorney's failure to adequately represent his interests, which would

15   be sufficient to satisfy the notice requirement.  *See In re Harmon*, 250 F.3d at 1244-

16   1245, 1247 and n. 7 (citation omitted); *see also, Baldwin v. Kilpatrick (In re*

17   *Baldwin)*, 249 F.3d 912, 919 (9th Cir. 2001) (Ninth Circuit held that despite any

18   indication in the record to show personal service on defendant, his "participation in

19   the state court litigation clearly shows that he "ha[d] actual knowledge of the

20   existence of the litigation" which was sufficient to establish notice).  Even after

21   finding that the threshold requirements for collateral estoppel are met, California

22   courts will not give preclusive effect to previous litigation of issues unless they

23   find that the public policies underlying the collateral estoppel doctrine would be

24   furthered by application of preclusion to the particular issue before the court.

25   *Lucido v. Superior Court*, 51 Cal.3d at 354-355.  In *Lucido v. Superior Court,* the

26   California Supreme Court identified three policies underlying the doctrine of

27   collateral estoppel that courts should consider: (1) preservation of the integrity of

28

1  the judicial system; (2) promotion of judicial economy; and (3) protection of litigants

2  from harassment by vexatious litigation.  *Id.*

3        In the prior action, the state court expressly found in favor of Plaintiff and

4  against Feb & May, Inc. and Park and Kim as its alter egos, on the cause of

5  action for conspiracy to covert commission funds, deemed the conduct to be

6  intentionally done to deprive Plaintiff of monies rightfully owed to it, and made a

7  finding of despicable conduct which was carried on by the Defendants with a

8  willful and conscious disregard of the rights of Plaintiff under Code of Civil

9  Procedure § 3294.  *Default Judgment by Court, International Business Investment,*

10 *Inc., v. Feb & May, Inc., et al.,* Case No. YC 063747, *Plaintiff's Trial Exhibit 3.*   As

11 discussed below, the court determines that collateral estoppel is applicable to the

12 issue of "willfulness" under 11 U.S.C. § 523(a)(6), but not as to the issue of "malice"

13 under 11 U.S.C § 523(a)(6), though nevertheless, Plaintiff has otherwise shown that

14 it is entitled to relief under its evidentiary showing on the elements of its claim under

15 11 U.S.C. § 523(a)(6).

16      **D.  Willfulness under 11 U.S.C. § 523(a)(6)**

17       As stated before, an injury is "willful" "when it is shown either that the

18 debtor had a subjective motive to inflict the injury *or* that the debtor believed that

19 injury was substantially certain to occur as a result of his conduct."  *In re Jercich*,

20 238 F.3d at 1208 (emphasis in original).   "Willful" intent does not require that the

21 debtor had the specific intent to injure the creditor, if the act was intentional and

22 the debtor knew that it would necessarily cause injury.  *Id.* at 1207.  "Willful"

23 means "voluntary" or "intentional."  *Kawaauhau v. Geiger*, 523 U.S. at 63, *citing,*

24 Restatement (Second) of Torts, §8A, comment A (1964).  This standard

25 focuses on the debtor's subjective intent, and not "whether an objective,

26 reasonable person would have known that the actions in question were

27 substantially certain to injure the creditor."  *In re Su*, 290 F.3d at 1145-1146.

28

The preponderance of the evidence here demonstrates that the debt from the injury to Plaintiff by Defendants was willful for purposes of 11 U.S.C. § 523(a)(6), which specifically includes many of the stipulated facts set forth in the joint pretrial stipulation and the documentary evidence, including copies of the executed broker representation agreement, the executed purchase and sales agreement for the Peninsula Grill transaction, the escrow cancellation documents, the so-called settlement agreement between the buyer and its representatives, Defendants, and the seller and its representative, Gor Habeshian, and the default proveup declaration of Sasa Milosevic on behalf of Plaintiff that was based on conversations that he had with Defendants' agents that Defendants as the representatives of the buyer and Gor Habeshian as the seller's representative entered into a secret agreement to back out of the Peninsula Grill purchase and sale transaction without paying Plaintiff's sales commission it had earned from the deal. *First Amended Complaint, International Business Investment, Inc., v. Feb & May, Inc., et al.,* Case No. YC 063747, dated February 3, 2012, and exhibits attached thereto, *Plaintiff's Trial Exhibit 1*; Uncontested Facts C-J and L, *Joint Pretrial Stipulation for Claims for Relief,* ECF 36, filed on July 26, 2016; *Notice of Cancellation of Escrow and Settlement Agreement and Release, Defendants' Trial Exhibits B and C; Declaration of Sasa Milosevic in Support of Request for Default Judgment by Court, International Business Investment, Inc., v. Feb & May, Inc., et al.,* Case No. YC 063747, at 4 and exhibits attached thereto, *Plaintiff's Trial Exhibit 4.* This evidence is sufficient to support a finding of willful intent based on Plaintiff's theory of relief that there was a "secret agreement" of the buyer, and its representatives, Defendants, and seller conspired to "convert" or acted to deprive Plaintiff of its sales commission which it had earned from the Peninsula Grill sales transaction entered into by the buyer and seller, leading the state court to find that these parties acted

1  intentionally and engaged in despicable conduct in doing so.  *Id.; see also,*

2  *Default Judgment by Court, International Business Investment, Inc., v. Feb & May,*

3  *Inc., et al.,* Case No. YC 063747, *Plaintiff's Trial Exhibit 3.*  The court notes that

4  under California law, the facts as pleaded in the complaint in a default judgment

5  case are considered as established in that proceeding.  *Brown v. Brown,* 170 Cal.

6  at 5 ("The judgment which follows upon this sort of admission is, in contemplation of

7  law, a complete adjudication of all the rights of the parties embraced in the prayer

8  for relief and arising from the facts stated in the complaint, including the facts in his

9  favor as well as those against him.  The defendant here is presumed to have

10 acceded to the proposition embraced in the complaint and to have consented that

11 plaintiff should obtain the relief therein prayed for, upon the conditions and facts set

12 forth in the complaint.")  The facts in the complaint in the state court action in which

13 the default judgment was rendered are essentially the same as in the default

14 proveup declaration of Mr. Milosevich.

15         On this evidentiary record, there is no reasonable explanation for the

16 cancellation of the Peninsula Grill purchase and sales contract and the related

17 escrow by Defendants jointly with the counterparty, the seller, and its

18 representation, without providing for Plaintiff's sales commission earned for the

19 transaction and without notifying Plaintiff or seeking its consent other than a

20 subjectively intentional act to deprive Plaintiff of its earned commission.

21 Defendants do not offer any explanation why the Peninsula Grill deal and escrow

22 were cancelled; for example, in their trial brief and Defendant Park's trial

23 declaration, Defendants only recite a chronology of events for the Peninsula Grill

24 purchase and sales transaction and its cancellation, but no explanation for why they

25 decided to cancel the transaction and escrow without providing for payment of

26 Plaintiff's earned sales commissions.  *Defendants Youngchul Park and Jeong*

27

28

1     *Hwan Kim's Trial Brief,* ECF 46, filed on December 8, 2016; *Direct Testimony of*

2     *Young Chul Park,* ECF 44, filed on December 6, 2016.

3          Based on this evidence, the court finds that Plaintiff has shown that

4     Defendants acted willfully in injuring Plaintiff by conspiring with the seller and its

5     representative not to pay Plaintiff's earned sales commission under 11 U.S.C. §

6     523(a)(6).  The evidence as described above, especially the uncontested facts in

7     the joint pretrial stipulation, Mr. Milosevich's default proveup declaration and the

8     absence of any reasonable explanation of why the Peninsula Grill transaction was

9     cancelled without any arrangement to pay Plaintiff's earned sales commission,

10     indicates that Defendants voluntarily and intentionally acted to deprive Plaintiff of its

11     earned sales commission from the Peninsula Grill deal that they entered into and

12     that they had a subjective motive to inflict this injury because they were having

13     financial problems and wanted to get out of the deal without paying the commission.

14          The court has considered Plaintiff's argument that Defendants are

15     collaterally estopped from contesting liability under 11 U.S.C. § 523(a)(6).

16     *Plaintiff International Business Investment, Inc.'s Trial Brief,* ECF 45, filed on

17     December 5, 2016, at 4-8.  Plaintiff argues that the state court default judgment

18     on its claim for the "intentional tort of conspiracy to commit conversion

19     ('Intentional Tort')" is entitled to collateral estoppel effect.  *Id.* at 7.  However,

20     collateral estoppel does not exactly fit here as Plaintiff has not established by a

21     preponderance of the evidence that  all the elements of collateral estoppel are

22     met here: (1) the issue sought to be precluded from relitigation must be identical

23     to that decided in a former proceeding; (2) this issue must have been actually

24     litigated in the former proceeding; (3) it must have been necessarily decided in

25     the former proceeding; (4) the decision in the former proceeding must be final

26     and on the merits; (5) the party against whom preclusion is sought must be the

27     same as, or in privity with, the party to the former proceeding.

28

1    As to both willfulness and malice, the two required elements of a claim

2  under 11 U.S.C. § 523(a)(6), the fourth and fifth elements of collateral estoppel

3  are met here: the state court default judgment is a final judgment on the merits,

4  and the same parties or parties in privity are involved as discussed above for

5  res judicata.

6    As to the issue of willfulness, Plaintiff has not demonstrated that the first,

7  second and third elements of collateral estoppel of the identical issue being

8  actually and necessary litigated appear to be present.  In this case, the

9  language of the state court's default judgment provided that the court "further

10  expressly finds in favor of Plaintiff INTERNATIONAL BUSINESS

11  INVESTMENT, INC., dba MANHATTAN.BIZ, and against THE GRAND CAFÉ &

12  GRILL, LLC, FEB & MAY, INC., YOUNG CHUL PARK and JEONG HWAN KIM

13  on the cause of action for conspiracy to convert commission funds, deems this

14  conduct to be intentionally done to deprive Plaintiff of monies rightfully owed to

15  it. . . ."  *Default Judgment by Court, International Business Investment, Inc., v. Feb*

16  *& May, Inc., et al.,* Case No. YC 063747, *Plaintiff's Trial Exhibit 3.*

17    However, "[c]ivil conspiracy is not an independent cause of action."

18  *Navarette v. Meyer,* 237 Cal.App.4[th] 1276, 1291 (2015), *citing inter alia, Applied*

19  *Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4[th] 503, 510 (1994).  "Instead, it

20  is a theory of co-equal legal liability under which certain defendants may be held

21  liable for 'an independent civil wrong' committed by others."  *Id., citing and quoting*

22  *inter alia, Rusheen v. Cohen,* 37 Cal.4[th] 1048, 1062 (2006).  "A participant in the

23  conspiracy 'effectively adopts as his or her own the torts of other coconspirators

24  within the ambit of the conspiracy.'"  *Id., citing and quoting inter alia, Applied*

25  *Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4[th] at 511.  "The elements of an

26  action for civil conspiracy are the formation and operation of the conspiracy and

27  damage resulting to plaintiff from an act or acts done in the furtherance of the

28

26

1  common design. . . . In such action the major significance of the conspiracy lies in

2  the fact that it renders each participant in the wrongful act responsible as a joint

3  tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he

4  was a direct actor and regardless of the degree of his activity.'" *Id.*  " 'The essence

5  of the claim is that it is merely a mechanism for imposing vicarious liability. . . . Each

6  member of the conspiracy becomes liable for all acts done by others pursuant to

7  the conspiracy, and for all damages caused thereby.' " *Navarrette v. Meyer,* 237

8  Cal.App.4th 1276, 1291 (2015), *citing and quoting, Stueve Bros. Farms, LLC v.*

9  *Berger Kahn,* 222 Cal.App.4th 303, 324 (2013).  "Under a conspiracy theory of

10 recovery, liability depends on the actual commission of a tort." *Id., citing inter alia,*

11 *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th at 511.  The

12 underlying tort claim for Plaintiff's state court default judgment action upon which it

13 relies to assert collateral estoppel is conversion.  *First Amended Complaint,*

14 *International Business Investment, Inc., v. Feb & May, Inc., et al.,* Case No. YC

15 063747, dated February 3, 2012, and exhibits attached thereto, *Plaintiff's Trial*

16 *Exhibit 1*; *Default Judgment by Court, International Business Investment, Inc., v.*

17 *Feb & May, Inc., et al.,* Case No. YC 063747, *Plaintiff's Trial Exhibit 3.*  The state

18 court in its default judgment found that the defendants in the state court action,

19 including Defendants in this adversary proceeding, conspired to convert and

20 through their joint actions, converted Plaintiff's sales commission from the escrow

21 funds in the Peninsula Grill purchase and sales transaction.  *Id.*

22      The issue here for purposes of determining the applicability of collateral

23 estoppel is whether the intent for the underlying tort of conversion under California

24 law is identical to willful intent under 11 U.S.C. §523(a)(6).  It does not appear to the

25 court that these standards are the same.  "Conversion is the wrongful exercise of

26 dominion over personal property of another."  5 Witkin, *Summary of California*

27 *Law,* Torts, § 699 at 1023 (10th ed. 2005 and 2016 Supp.), *citing inter alia,*

28

1    *Steele v. Marsicano,* 102 Cal. 666, 669 (1894).  As to intent, a leading

2    commentator on California law, Witkin's Summary of California Law, states:

3    "The act constituting conversion must be knowing or intentional.  However, a

4    wrongful intent is not necessary."  5 Witkin, *Summary of California Law,* Torts, §

5    713 at 1037, *citing inter alia, Poggi v. Scott,* 167 Cal. 372, 375 (1914).  "The

6    foundation for the action of conversion rests neither in the knowledge nor the

7    intent of the defendant.  It rests upon the unwarranted interference by

8    defendant with the dominion over the property of the plaintiff from which injury

9    to the latter results.  Therefore, neither good nor bad faith, neither care nor

10   negligence, neither knowledge nor ignorance, are of the gist of the action."

11   *Poggi v. Scott,* 167 Cal. at 375, *cited and quoted in* 5 Witkin, *Summary of*

12   *California Law,* Torts, § 713 at 1037.  "Conversion is a strict liability tort . . .

13   [T]he tort consists in the breach of an absolute duty; the act of conversion itself

14   is tortious."  *Burlesci v. Petersen,* 68 Cal.App.4[th] 1062, 1066 (1998), *cited and*

15   *quoted in* 5 Witkin, *Summary of California Law,* Torts, § 713 at 1037.  The tort

16   of conversion may be committed by an innocent agent, who is still liable for the

17   tort.  5 Witkin, *Summary of California Law,* Torts, § 714 at 1038, *citing inter alia,*

18   *Swim v. Wilson,* 90 Cal. 126, 129 (1891).

19           In contrast, "willful" intent under 11 U.S.C. § 523(a)(6) requires an

20   intentional act and a subject motive to injure the creditor or knowledge that the

21   act would necessarily cause injury.  *In re Jercich*, 238 F.3d at 1207-1208.

22   Thus, the standards are different.

23           Because the intent standards for conversion under California law and under

24   11 U.S.C. § 523(a)(6) are not the same, the issues for collateral estoppel purposes

25   are not identical, and thus, it cannot be said that the issue in the prior action was

26   identical, actually litigated or necessarily litigated.  Thus, collateral estoppel does

27   not apply here since not all the elements for its application are satisfied.

28

1

### E.  Malice under 11 U.S.C. § 523(a)(6)

2    As noted before, Plaintiff must also prove "malicious" injury to establish

3    its claim under 11 U.S.C. § 523(a)(6), which is a requirement separate from the

4    "willful" requirement.  *In re Su*, 290 F.3d at 1146.  An injury is "malicious" if it

5    involves "(1) a wrongful act, (2) done intentionally, (3) which necessarily

6    cause[d] injury, and (4) is done without just cause or excuse."  *In re Jercich*, 238

7    F.3d at 1208, *citing*, *In re Bammer*, 131 F.3d at 791.

8    The preponderance of the evidence here demonstrates that the debt

9    from the injury to Plaintiff by Defendants was malicious for purposes of 11

10   U.S.C. § 523(a)(6), which specifically includes many of the stipulated facts set

11   forth in the joint pretrial stipulation and the documentary evidence, including

12   copies of the executed broker representation agreement, the executed

13   purchase and sales agreement for the Peninsula Grill transaction, the escrow

14   cancellation documents, the so-called settlement agreement between the buyer

15   and its representatives, Defendants, and the seller and its representative, Gor

16   Habeshian, and the default proveup declaration of Sasa Milosevic on behalf of

17   Plaintiff that based on conversations that he had with Defendants' agents that

18   Defendants as the representatives of the buyer and Gor Habeshian as the

19   seller's representative entered into a secret agreement to back out of the

20   Peninsula Grill purchase and sale transaction without paying Plaintiff's sales

21   commission it had earned from the deal.  *First Amended Complaint, International*

22   *Business Investment, Inc., v. Feb & May, Inc., et al.,* Case No. YC 063747, dated

23   February 3, 2012, and exhibits attached thereto, *Plaintiff's Trial Exhibit 1*;

24   Uncontested Facts C-J and L, *Joint Pretrial Stipulation for Claims for Relief,* ECF

25   36, filed on July 26, 2016; *Notice of Cancellation of Escrow and Settlement*

26   *Agreement and Release, Defendants' Trial Exhibits B and C; Declaration of Sasa*

27   *Milosevic in Support of Request for Default Judgment by Court, International*

28

1  *Business Investment, Inc., v. Feb & May, Inc., et al.,* Case No. YC 063747, at 4 and

2  exhibits attached thereto, *Plaintiff's Trial Exhibit 4.*   This evidence is sufficient to

3  support a finding of malicious intent based on Plaintiff's theory of relief that there

4  was a "secret agreement" of the buyer, and its representatives, Defendants,

5  and seller conspired to "convert" or acted to deprive Plaintiff of its sales

6  commission which it had earned from the Peninsula Grill sales transaction

7  entered into by the buyer and seller, leading the state court to find that these

8  parties acted intentionally and engaged in despicable conduct in doing so.  *Id.;*

9  *see also, Default Judgment by Court, International Business Investment, Inc., v.*

10 *Feb & May, Inc., et al.,* Case No. YC 063747, *Plaintiff's Trial Exhibit 3.*  The court

11 notes that under California law, the facts as pleaded in the complaint in a default

12 judgment case are considered as established in that proceeding.  *Brown v. Brown,*

13 170 Cal. at 5 ("The judgment which follows upon this sort of admission is, in

14 contemplation of law, a complete adjudication of all the rights of the parties

15 embraced in the prayer for relief and arising from the facts stated in the complaint,

16 including the facts in his favor as well as those against him.  The defendant here is

17 presumed to have acceded to the proposition embraced in the complaint and to

18 have consented that plaintiff should obtain the relief therein prayed for, upon the

19 conditions and facts set forth in the complaint.")  The facts in the complaint in the

20 state court action in which the default judgment was rendered are essentially the

21 same as in the default proveup declaration of Mr. Milosevich.

22        On this evidentiary record, there is no reasonable explanation for the

23 cancellation of the escrow by Defendants jointly with the contract counterparty, the

24 seller, and its representative, without providing for Plaintiff's sales commission

25 earned for the transaction and without notifying Plaintiff or seeking its consent other

26 than a subjectively intentional act to deprive Plaintiff of its earned commission.

27 Based on this evidence, the court finds that Plaintiff has shown that Defendants

28

acted with malice in injuring Plaintiff by conspiring with the seller and its

representative not to pay Plaintiff's earned sales commission under 11 U.S.C. §

523(a)(6). The evidence as described above, especially the uncontested facts in

the joint pretrial stipulation, Mr. Milosevich's default proveup declaration and the

absence of any reasonable explanation of why the Peninsula Grill transaction was

cancelled without any arrangement to pay Plaintiff's earned sales commission,

indicates that Defendants engaged in a tortious or wrongful act of "conversion" to

deprive Plaintiff of its earned sales commission from the Peninsula Grill deal,

which was done intentionally through the secret agreement with the seller to

cancel the deal to cancel escrow and not pay the commission without Plaintiff's

knowledge or consent, which necessarily caused injury to deprive Plaintiff of its

commission, and was done without just cause or excuse as discussed above.

As for willfulness, the court has considered Plaintiff's argument that

Defendants are collaterally estopped from contesting liability under 11 U.S.C. §

523(a)(6) as to malicious injury. However, collateral estoppel does not exactly

fit here as Plaintiff has not established by a preponderance of the evidence that

all the elements of collateral estoppel are met here: (1) the issue sought to be

precluded from relitigation must be identical to that decided in a former

proceeding; (2) this issue must have been actually litigated in the former

proceeding; (3) it must have been necessarily decided in the former proceeding;

(4) the decision in the former proceeding must be final and on the merits; (5) the

party against whom preclusion is sought must be the same as, or in privity with,

the party to the former proceeding.

In the prior action, the state court expressly found in favor of Plaintiff and

against Feb & May, Inc. and Park and Kim as its alter egos, on the cause of

action for conspiracy to convert commission funds, deemed the conduct to be

intentionally done to deprive Plaintiff of monies rightfully owed to it, which has

1  been discussed above as to willfulness, and made a finding of despicable

2  conduct which was carried on by the Defendants with a willful and conscious

3  disregard of the rights of Plaintiff under Code of Civil Procedure § 3294.  *Default*

4  *Judgment by Court, International Business Investment, Inc., v. Feb & May, Inc., et*

5  *al.,* Case No. YC 063747, *Plaintiff's Trial Exhibit 3.*  The court observes that

6  California Civil Code § 3294(c)(1) specifically defines "malice" as "conduct

7  which is intended by the defendant to cause injury to the plaintiff or despicable

8  conduct which is carried on by the defendant with a willful and conscious

9  disregard of the rights or safety of others."  However, the Bankruptcy Appellate

10  Panel of the Ninth Circuit recently decided that a finding of "despicable" malice

11  by the state court under California Civil Code § 3294 may not be by itself

12  sufficient to support collateral estoppel under 11 U.S.C. § 523(a)(6) because

13  the alternative standard of the conscious disregard of the rights or safety of

14  others is not the equivalent of intentional conduct required under 11 U.S.C. §

15  523(a)(6) because it may be met by a showing of "conscious disregard" which is

16  the equivalent of reckless conduct not insufficient to meet the standard of 11

17  U.S.C. § 523(a)(6). *In re Plyam,* 530 B.R. at 463-470, *citing inter alia, Taylor v.*

18  *Superior Court,* 24 Cal.3d 890, 895-896 (1979) and *Restatement (Second) of*

19  *Torts,* § 500 cmt. A (1965).

20       In the prior action, the state court stated in its default judgment that it

21  "makes a finding of despicable conduct which was carried on by the defendants

22  with a willful and conscious disregard of the rights of Plaintiff under Code of Civil

23  Procedure § 3294." *Default Judgment by Court, International Business Investment,*

24  *Inc., v. Feb & May, Inc., et al.,* Case No. YC 063747, *Plaintiff's Trial Exhibit 3.*  The

25  state court's finding of despicable conduct is the same "despicable malice" conduct

26  finding that the Bankruptcy Appellate Panel in *In re Plyam* that is insufficient to

27  prove malice under 11 U.S.C. § 523(a)(6).  *In re Plyam,* 530 B.R. at 463-470.

28

1    Because the intent standards for malice under California Code of Civil

2  Procedure § 3294 and under 11 U.S.C. § 523(a)(6) are not the same, the issues for

3  collateral estoppel purposes are not identical, and thus, it cannot be said that the

4  issue in the prior action was identical, actually litigated or necessarily litigated.

5  Thus, collateral estoppel does not apply here since not all the elements for its

6  application are satisfied.

7    Nevertheless, based on the foregoing analysis, the court finds that

8  Plaintiff has shown by a preponderance of the evidence that the debt owed by

9  Defendants to Plaintiff was caused by willful and malicious injury to Plaintiff by

10  them and that Plaintiff is entitled to relief on its claim under 11 U.S.C. §

11  523(a)(6).

12

13    **F.  Plaintiff was Entitled to Apply the $27,600 Payment as it Saw Fit**

14    Defendants argue in their alternative findings of fact and conclusions of law

15  that Plaintiff may not apply the $27,600 in the funds released from escrow to the

16  dischargeable portion of their debt to Plaintiff.  However, California Civil Code §

17  1479 allows a debtor to determine the application of a payment only when the

18  debtor "does an act" by performance (i.e., payment) manifest his or her intention or

19  desire that the performance be applied to extinguish a specific obligation, or

20  otherwise, the creditor was free to apply the performance to any obligation.  *See*

21  *also, Gerwer v. Salzman (In re Gerwer),* 253 B.R. 66, 70-71 (9th Cir. BAP 2000).  On

22  March 22, 2013, Plaintiff filed an ex parte application in the state court to permit

23  release of the $27,600 in partial satisfaction of the default judgment, which that

24  court granted.  The evidence indicates that the payment of the $27,600 was not an

25  act of performance by the debtors, Park and Kim, but by order of the court upon

26  Plaintiff's ex parte motion for release of the funds in escrow.  *See, In re Gerwer,* 253

27  B.R. at 70 ("Because [the debtor] did not make the payment and therefore cannot

28  direct its allocation, [the creditor] had the right to allocate the distribution as he so

33

1  determined.") (relying upon California Civil Code § 1479).  Accordingly, there was

2  no duty of the creditor, Plaintiff, to apply the payments to the obligation as now

3  desired by Defendants.  Thus, Plaintiff's application of the $27,600 in funds released

4  upon order of the state court to the dischargeable portion of the debt was not

5  improper.

6                              **CONCLUSION**

7         Plaintiff has met its burden to prove by a preponderance of the evidence the

8  willful and malicious conduct of Defendants to entitle it to relief on its claim against

9  Defendants under 11 U.S.C. § 523(a)(6).  The amount of the debt of Defendants

10  owed to Plaintiff from the state court judgment relating to the conversion of the

11  commissions of $41,554.56 is determined to be not dischargeable pursuant to 11

12  U.S.C. § 523(a)(6).

13         This memorandum decision constitutes the court's findings of fact and

14  conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy

15  Procedure and Rule 52 of the Federal Rules of Civil Procedure.  A separate

16  judgment is being entered concurrently.

17         IT IS SO ORDERED.

18                                      ###

19

20

21

22

23  Date: July 13, 2017

24                                      _____
                                        Robert Kwan
25                                      United States Bankruptcy Judge

26

27

28

34